FIDELITY STORAGE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18390, 24221, 40787. Promulgated December 16, 1929.

518

*Ben Jenkins, Esq., E. W. Wallick, Esq.,* and *D. J. Shorb, Esq.,* for the petitioner.

*C. H. Curl, Esq.,* for the respondent.

OPINION.

GREEN: Before considering the errors assigned in these proceedings, we feel constrained to mention some of the difficulties with which we were confronted in making findings of fact.

The trial of the case consumed over three days, during which time the several witnesses were called and recalled as many as eight times. For reasons immediately apparent to anyone who reads the record, and particularly to one who saw them on the witness stand, the testimony of the witnesses, Karrick and Plager, is entitled to little weight, except where corroborated by other witnesses. They testified to many matters as to which, we, for the above reason, can make no findings of fact. Subsequent to the revenue agent's investigation pertinent records were destroyed at the direction of the petitioner's board of directors. Little direct evidence was offered relative to the March 1, 1913, value of the petitioner's warehouse, but an attempt was made to establish, through estimates of replacement costs, a March 1, 1913, value for purposes of depreciation and obsolescence, which value was greatly in excess of the value previously used by the petitioner before the District of Columbia taxing authorities, as well as the Income Tax Unit, and also in excess of the value shown on the petitioner's books. These difficulties are in no wise to be attributed to counsel for the parties.

We now take up the errors assigned, in the order in which they have been previously stated.

1. The question of the statute of limitations was decided adversely to the petitioner at the hearing. The petitioner was incorporated under the laws of the State of Virginia, under the name of the Fidelity Storage Corporation. It advertised as the Fidelity Storage Co. The two names were synonymous in Washington, where it was the only Fidelity Storage concern dealing with the public and there was no corporate entity in existence known as the Fidelity Storage Co. The two designations were used indiscriminately by the petitioner in making tax returns. We are of the opinion that the fact that the waiver in question was signed " The Fidelity Storage Company," by the petitioner's president, and had the petitioner's corporate seal affixed, is not such a defect as to prevent the extension of the period of assessment for the years 1918 and 1919.

2. The petitioner, at all times, kept its books of account on the accrual basis. In 1918, by a resolution of the board of directors, it voted to pay Karrick, its president, $9,000, as salary for the years 1906 to 1908, inclusive. When the revenue agent was investigating the petitioner's books for the year 1918 he criticized this item as not being a proper deduction for the year 1918. After this investigation, in order to overcome the objection, the resolutions were rewritten and the secretary directed to destroy the original minutes. We have before us the testimony of the revenue agent and the reconstructed record. Karrick, in his original return for 1918, failed to report the $9,000 as additional salary for that year, which may indicate that he considered it as compensation for services performed in prior years. The evidence fails to support the contention of the petitioner that $13,000 was a reasonable salary for its president in the year 1918. We are of the opinion that the respondent's determination that the $9,000 was compensation for prior years and not a proper deduction for the year 1918 should be sustained.

3. As to the matter of $1,050 paid to Karrick in 1918 on account of interest, the facts in regard to this are meager and also confused by reason of the destruction of the original records. From the facts presented, we are unable to find any error in the respondent's determination, and, accordingly, it is approved.

4. In 1910 the petitioner leased a portion of its premises to the Sealed Package Ice Co., which began the manufacture of ice in 1911 and after being in operation for six weeks went into bankruptcy. Karrick in 1913 purchased the assets from the trustee for 10 per cent of the unsecured claims and by surrendering his own claims and the claims of the petitioner. The petitioner is contending that it had an agreement with Karrick by which it was to participate with him in proportion to its preferred claim after he had been reimbursed for the cash expended. The record does not support any such contention, and we are of the opinion that the respondent's determination that the transaction with the Sealed Package Ice Co., as far as the petitioner was concerned, was entirely closed in 1913, when it surrendered its claims to the trustee in bankruptcy.

5. The respondent has determined a March 1, 1913, value on the petitioner's building of $278,595.32, and has allowed depreciation on this amount at the rate of 2½ per cent for the years in question. The petitioner claims a valuation of $450,000 and a life of 30 years, or a depreciation rate of 3½ per cent.

Such evidence as we have is not sufficient to overcome the presumption of correctness of the determination of value made by the respondent, and his determination is sustained. The petitioner

contends that the increase in colored population has decreased the useful life of the building and that the rate of depreciation should be increased from 2½ to 3½ per cent. The warehouse is centrally located in the City of Washington. We have found its life to be 40 years, and, from the evidence presented, we are unable to find that the change in population has affected the useful life of the building.

6. The next error relates to the respondent's refusal to allow deductions as ordinary and necessary business expenses, from gross income in the years 1918 and 1920 for certain sums that were paid by Karrick through his real estate office. No books were offered in connection with these transactions. It is astonishing that the petitioner with a bookkeeping force at hand, and that Karrick, the president of a bank and operating a real estate office, had no record available to substantiate the verbal statements of an employee of Karrick's real estate agency. On account of lack of proof, the respondent's determination should be sustained.

7. As to the assignment of error relating to the loss sustained by reason of the abandonment of the electrical charging equipment, the petitioner has failed to show the March 1, 1913, value of this equipment or the rate of depreciation sustained. It appears from the record that the electrical charging equipment was in fact abandoned some time in the year 1916. Accordingly, the respondent's determination should be affirmed.

8. The next assignment of error relates to the expenditures in connection with grills, skylights, and roof on the petitioner's warehouse, which are claimed as ordinary and necessary repairs and not betterments.

As to these three major expenditures no attempt was made to show any of the details of the cost of the work. The petitioner's books show a credit of $15,500 to Karrick, which it is contended, represents these items. The original grills were damaged by the falling of the cornice. No attempt was made to show the depreciated value of the grills which were removed. New and heavier grills were installed at an expense of $877.23. Seventeen skylights were rebuilt, at a cost of $2,800. These were installed on the roof in a manner which was more effective than the original installation. Three thousand dollars was spent on the roof. It is apparent from the record that this expenditure represents more than the cost of the usual annual repairs, and represents about two-thirds of the cost of a new roof. As to these three expenditures, the record contains nothing that would disprove the respondent's determination that they were in the nature of betterments and should be capitalized.

9. No evidence was offered relative to the alleged loss resulting from the removal of the fixtures and equipment installed for the Northwest Packing Co., and as to this issue the respondent will be sustained.

The petitioner, at the hearing, abandoned the issues set up in paragraphs 10, 11, and 12.

*Judgment will be entered for the respondent.*